UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 14 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

JAMES NELSON BLAIR,

      Petitioner - Appellant,

  v.

JEANNE S. WOODFORD,

      Respondent - Appellee.

No. 01-99003

D.C. No. CV-99-06859-~~MRP-MC~~ VAP-OP
U.S. District Court for Central
California, Los Angeles

**MANDATE**

RECEIVED
CLERK, U.S. DISTRICT COURT

NOV 1 4 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The judgment of this Court, entered July 20, 2011, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                      FOR THE COURT:
                      Molly C. Dwyer
                      Clerk of Court

                      Pinky Argonza
                      Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES NELSON BLAIR,
            *Petitioner-Appellant,*

            v.

MICHAEL MARTEL, Warden,
California State Prison at San
Quentin,
            *Respondent-Appellee.*

No. 01-99003

D.C. No.
CV-99-06859-
MRP-MC

OPINION

Appeal from the United States District Court
for the Central District of California
Mariana R. Pfaelzer, Senior District Judge, Presiding

Argued and Submitted
May 12, 2011—Pasadena, California

Filed July 20, 2011

Before: Stephen Reinhardt, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Graber

9663

## COUNSEL

Statia Peakheart and C. Pamela Gomez, Deputy Federal Public Defenders, Los Angeles, California, for the petitioner-appellant.

A. Scott Hayward, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

## OPINION

GRABER, Circuit Judge:

Petitioner James Nelson Blair seeks a writ of habeas corpus. He argues that the California Supreme Court's delay in resolving the direct appeal from his murder conviction and death sentence denied his right to due process under the Fourteenth Amendment. Because no Supreme Court decision clearly establishes such a right, we affirm the denial of the writ.

I.   *Background*

We described the facts that led to Petitioner's conviction and sentence in an earlier published order, and we will not repeat those facts here. *Blair v. Woodford*, 319 F.3d 1087 (9th Cir. 2003). That order stayed our consideration of Blair's habeas claim pending the outcome of Blair's direct appeal to the California Supreme Court, which by that point had finally begun. *Id.* at 1088-89. In 2005, the California Supreme Court rendered its decision affirming Blair's conviction and sentence in full. *People v. Blair*, 115 P.3d 1145 (Cal. 2005). We then resumed our proceedings.

In a motion filed with us in 2005, while Petitioner's appeal from the district court's denial of his petition was pending, Petitioner asked for a hearing to determine whether he was competent to continue pursuing habeas relief. *See Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003) (holding that a death-sentenced state prisoner has a right to a competency determination in federal habeas proceedings). In an unpublished order, we remanded the case to the district court for the limited purpose of conducting a competency hearing, and the district court since has determined that Petitioner is competent. Petitioner now challenges that decision as clearly erroneous.

In the meantime, we decided a habeas claim similar to Petitioner's in *Hayes v. Ayers*, 632 F.3d 500, 523 (9th Cir. 2011), where we held that no clearly established Supreme Court precedent recognizes a due process right to a speedy appeal. The state asks us to affirm the denial of the writ in this case, arguing that *Hayes* forecloses relief as a matter of law. For the reasons given below, we dismiss in part and affirm in part.

II.  *Discussion*[1]

  A.  *The district court erred when it placed the burden on Petitioner to prove his incompetence.*

[1] We begin with the competency issue. We addressed the right of a death-sentenced state prisoner to be competent during his federal habeas proceeding in *Gates*, 334 F.3d at 807-17 and held that prisoners indeed enjoy such a right under the statute granting them the services of counsel, *id.* at 817. Unless such a prisoner "has the capacity to understand his position and to communicate rationally with counsel," the dis-

---

[1]We review a district court's competency determination for clear error, *Comer v. Schriro*, 480 F.3d 960, 962 (9th Cir. 2007) (en banc) (per curiam), and review de novo the district court's denial of a petition for habeas relief, *Hayes*, 632 F.3d at 507.

trict court must stay habeas proceedings until the prisoner regains that capacity. *Id.* at 819.

The parties do not dispute Petitioner's right to be competent while his habeas petition is adjudicated. But they do dispute the proper procedures for determining Petitioner's competence. In particular, they quarrel about who bears the burden of proving their respective points—whether Petitioner bears the burden of proving his incompetence, or the state bears the burden of proving Petitioner's competence.

Petitioner relies for his position on our opinion in *Mason ex rel. Marson v. Vasquez*, 5 F.3d 1220, 1225 (9th Cir. 1993), which involved a death-sentenced state prisoner who wanted to abandon his federal habeas petition during the course of those proceedings. His lawyer challenged his competency to do so. *Id.* at 1224. The district court convened a competency hearing and found that the petitioner competently had decided to withdraw his habeas petition. *Id.* The issue then came to us on appeal. Of the procedures to be used in determining someone's competence during habeas proceedings, we wrote:

> When a habeas petition has been filed in the federal district court, appropriately invoking the court's jurisdiction and the mental competency of the petitioner is reasonably questioned, it is the obligation of the court to determine the petitioner's mental competence. Initially sufficient evidence must be presented to cause the court to conduct an inquiry. After that point it is no one's burden to sustain, rather it is for the court to determine by a preponderance of the evidence whether the petitioner is mentally competent to withdraw his petition.

*Id.* at 1225. Applying *Mason* here, the question for the district court would be whether a preponderance of the evidence established Petitioner's competence. If it did not, then *Mason* compels a finding of incompetence.

[2] As the state points out, however, that direction differs from Congress' instructions with respect to competency hearings held during federal criminal trials. Under 18 U.S.C. § 4241(d), a district court must find a criminal defendant incompetent when "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent." Those instructions apply "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence." *Id.* § 4241(a). Using Congress' rule, the question for the district court would be whether a preponderance of the evidence established Petitioner's incompetence. Otherwise, § 4241(d) compels a finding of competence.

[3] The district court chose to apply the competency standard for federal criminal trials, rather than the standard required by *Mason* for habeas petitioners and put Petitioner to the task of proving his incompetence. Finding this "a close case" in which "[c]onsideration of the standard and burden . . . is of great consequence," the court decided that Petitioner failed to carry his burden and found him to be competent. We cannot agree with its decision to apply the standards in § 4241(d). By its own terms, § 4241 does not apply unless a federal criminal defendant is on trial or is released on probation. Petitioner has been convicted and sentenced in state court. He has not been released on probation or otherwise. As Petitioner's circumstances plainly do not fall within the terms of § 4241(a), the procedures in § 4241(d) do not apply. The district court erred when it held otherwise.

The state nevertheless urges us to confine *Mason* to its facts. According to the state's reading of *Mason*, we spoke only to the situation in which a possibly incompetent petitioner decides to *abandon* a habeas petition. That is, the state argues, *Mason* says nothing about a situation in which a possibly incompetent petitioner *initiates* or *continues to pursue* a

habeas petition. That reading leaves us free, according to the state, to adopt the well-reasoned standards set out in § 4241, even if Congress did not intend for § 4241 to apply in these particular circumstances.

We find the state's reading of *Mason* to be unduly narrow. Although *Mason* addressed a petitioner who wanted to abandon his petition, we did not qualify our holding to that limited situation. To the contrary, we framed our holding broadly, referring to any time "[w]hen a habeas petition has been filed in the federal district court, appropriately invoking the court's jurisdiction." *Mason*, 5 F.3d at 1225. And we understood that our formulation of the burden of proof in the habeas context differed from the permissible burden in the context of a criminal trial, in which the Supreme Court has upheld a state's decision "to place upon the party claiming incompetence the burden of proving by a preponderance of the evidence that the defendant is incompetent." *Id.* (citing *Medina v. California*, 505 U.S. 437 (1992)). Despite that difference, we thought that our formulation of the burden better fit the special context of federal habeas proceedings.

[4] In addition to noting the fact that the text of our holding in *Mason* applies in the present context, we observe that the logic of *Mason* applies here as well. Petitioner's decision to start or continue a federal habeas case is essentially equivalent to a decision to withdraw a federal habeas case, once begun; similarly, determining which claims to bring in a habeas petition and which to leave out requires no less competency than determining whether to withdraw a habeas petition. The same competency rule logically extends to both.

[5] We therefore hold that, when deciding whether Petitioner possessed the mental competence required under *Gates*, the district court had to use the procedure and apply the burden of proof that we prescribed in *Mason*. Not having done so, the court erred.

B. *Nonetheless, in the circumstances, we need not remand the competency issue.*

In the usual case, we would reverse an erroneously analyzed competency determination and remand the matter so that the court could apply the correct legal standard to the evidence. *See generally San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009) (recognizing that, when reviewing for clear error, we usually must reverse if the district court applied incorrect legal standards to reach its findings). Here, however, we need not reverse and remand because, for the reasons that we discuss below, even if we assume Petitioner's incompetence, it cannot matter to the outcome of this appeal on the sole legal issue presented.

In *Gates*, 334 F.3d at 807-17, we surveyed the common law, Supreme Court precedents, federal statutes, and our own case law, looking for guidance on whether a right to competence exists for a capital habeas petitioner. In each of those places, we saw a common concern: that a condemned prisoner may, even after trial, " 'allege[ ] something in stay of judgment or execution.' " *Id.* at 808 (quoting 4 William Blackstone, *Commentaries* *24-25 (1769)). That concern explains the importance of having adequate post-conviction proceedings, which, we observed in *Gates*, have come to subsume other traditional means of giving voice to capital prisoners' claims. *Id.* at 811.

We also observed that Congress has acknowledged the importance of adequate post-conviction review by providing a right to counsel to all capital prisoners who challenge their convictions or sentences in federal court. *See McFarland v. Scott*, 512 U.S. 849, 859 (1994) ("Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty."). In light of those observations, we reasoned that, "if meaningful assistance of counsel is essential to

the fair administration of the death penalty and capacity for rational communication is essential to meaningful assistance of counsel, it follows that Congress's mandate cannot be faithfully enforced unless courts ensure that a petitioner is competent." *Gates*, 334 F.3d at 813.

[6] But that rationale only goes so far. When the law forecloses a petitioner's habeas claim no matter what arguments he might make, we see no benefit that could come from the petitioner's communications with his lawyer, rational or otherwise. For that reason, we qualified our holding in *Gates* to circumstances in which a capital habeas petitioner "raises claims that could potentially benefit from his ability to communicate rationally." *Id.* at 819. We therefore hold that, whether a habeas petitioner has the competence to assist his lawyer or not, a habeas petition raising only claims for relief that fail as a matter of law must be denied. In those circumstances, a district court has no obligation to inquire into the petitioner's competency, even if some evidence suggests that the petitioner may be incompetent.[2] We therefore need not remand the competency issue here, even though the district court applied an incorrect legal standard.

   C.  *Because no Supreme Court case clearly establishes a due process right to a speedy appeal, Petitioner's habeas claim must be denied.*

We turn, finally, to the merits of Petitioner's habeas claim. When this appeal began, Petitioner alleged that he was being denied due process by the California Supreme Court's delay in processing his direct appeal. He asked that we order that court to give him the appellate process due him under California law. In making that request, Petitioner raised two distinct claims. The first alleged a *present* harm: The delay that he

---

[2]At the time we remanded this case for a competency determination, in 2005, *Hayes* lay six years in the future and the law was in flux. Were the same situation to arise today, no remand would be required.

was experiencing amounted to a deprivation of his state-created right to an appeal. The second alleged a *future* harm: The delay would cause prejudice in the future to his ability to secure a reversal of his conviction on appeal, or a fair trial on remand. We take each of those claims in turn.

  1.  *The Request for an Order to Speed Up Petitioner's State Appeal*

[7] We dismiss this claim for two independent reasons. First, the claim became moot when the California Supreme Court heard and decided Petitioner's appeal on the merits. We cannot now order that court to do something faster that it has done already. *See generally Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." (internal quotation marks omitted)).

Second, under current Supreme Court law, we lack habeas jurisdiction to consider Petitioner's request for an order compelling a state court to process his appeal. In two recent cases, *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), the Court has made clear that an action brought under 42 U.S.C. § 1983 is the proper course for a constitutional claim such as the one that Petitioner originally filed here. Those decisions distinguish between claims that necessarily imply the invalidity of a conviction, which must be brought in the context of a habeas petition, and claims for constitutional violations that do not necessarily spell speedier release and thus do not lie at the core of habeas corpus, which may be brought, if at all, under § 1983. *Skinner*, 131 S. Ct. at 1298-99 & n.13.

[8] Under *Skinner* in particular, a prisoner, like Petitioner, who wants to compel the processing of an appeal to which state law entitles him, may not file a habeas petition to obtain

that result. A due process claim of that sort does not *"necessarily* imply the invalidity of [a] conviction." *Id.* at 1298 (emphasis added). In fact, it says nothing about the validity of the conviction because it raises an issue of process, not substance. Neither does the claim *"necessarily* spell speedier release," *id.* at 1299 n.13 (emphasis added), because, as happened here, the state court might affirm the prisoner's conviction and sentence, leaving him in custody. We therefore conclude that a request for an order directing a state court to hasten its consideration of an appeal belongs in a § 1983 complaint, not a habeas petition.[3]

Because we lack jurisdiction over Petitioner's first claim, we dismiss it.

### 2. *The Due Process Claim*

The second claim brings us to the heart of Petitioner's case. Petitioner argues that the California Supreme Court unreasonably applied federal law when it rejected his claim that the delay in his direct appeal violated his due process right under the Fourteenth Amendment. *See Blair*, 115 P.3d at 1190-91 (rejecting Petitioner's claim that the delay in processing his direct appeal violated his federal constitutional rights).

**[9]** Under the now familiar provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant a writ of habeas corpus unless the state court's decision under review was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As an initial matter, Petitioner argues that § 2254(d) does not apply to his petition because the California Supreme Court did not adjudicate Petitioner's exces-

---

[3]We express no view on the merits of such a § 1983 claim or on what relief, if any, might be available if the claim were pleaded in the proper place and at the proper time.

sive delay claim "on the merits" when he first brought this claim to the California Supreme Court's attention in a petition for state habeas relief filed in 1998, while his direct appeal was pending. *See Harrington v. Richter*, 131 S. Ct. 770, 780 (2011) (recognizing that § 2254(d), by its own terms, applies only to "claims previously 'adjudicated on the merits' in state-court proceedings"). The court denied that petition in a brief but vague order. We need not decide whether that order demonstrates that the court decided Blair's due process claim "on the merits," however, because Blair's appellate-delay claim clearly was "adjudicated on the merits in State court proceedings" in 2005, when the California Supreme Court considered the issue among Blair's other grounds for appeal. 28 U.S.C. § 2254(d); *see Blair*, 115 P.3d at 1190-91. That state-court decision suffices to trigger AEDPA's standard of review here.

[10] Because § 2254(d) applies, our recent decision in *Hayes* forecloses relief on Petitioner's due process claim. In *Hayes*, 632 F.3d at 523, we addressed strikingly similar circumstances. The petitioner's appointed lawyers took eleven years to file the petitioner's direct appeal in the California Supreme Court: four years to complete the record, at least two years to work on the brief, and another five years of unexplained delay. The petitioner sought federal habeas relief, arguing that "the nearly eleven-year delay between his sentencing and the filing of his opening brief on direct appeal . . . violated his right to due process on appeal." *Id.* We rejected that claim under § 2254(d), holding that "no clearly established Federal law, as determined by the Supreme Court of the United States recognizes a due process right to a speedy appeal." *Id.* (internal quotation marks omitted).

That holding is the law of this circuit. Because no Supreme Court decision clearly establishes the right that Petitioner claims California violated, AEDPA requires that we deny the remainder of his habeas petition.

DISMISSED in part and AFFIRMED in part.